UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAY YVONNE PEALO,

                        Plaintiff,

v.                                                         3:17-CV-0149
                                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD OLINSKY, ESQ.
  Counsel for Plaintiff
One Park Place
300 South State Ste., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.         LORIE E. LUPKIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 14.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Kay Yvonne Pealo ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 15.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1951. (T. 63.) She completed high school. (T. 150.) Generally, Plaintiff's alleged disability consists of high cholesterol, back problems, a heart condition, irritable bowel syndrome ("IBS"), hypertension, and gastroesophageal reflux disease ("GERD"). (T. 149.) Her alleged disability onset date is April 5, 2013. (T. 63.) Her date last insured is September 30, 2017. (*Id.*) She previously worked as a finance manager, office manager, and receptionist. (T. 151.)

### B. Procedural History

On August 12, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 72.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 7, 2015, Plaintiff appeared before the ALJ, Gregory M. Hamel. (T. 34-62.) On April 3, 2015, ALJ Hamel issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 20-33.) On December 14, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 25-30.)  First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2017 and Plaintiff had not engaged in substantial gainful activity since April 5, 2013.  (T. 25.)  Second, the ALJ found that Plaintiff had the severe impairments of lumbosacral disc disease, cervicalgia and cervical radiculopathy, and paroxysmal atrial fibrillation.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 26.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work[1].  (T. 26.)  The ALJ found that Plaintiff could not climb ladders or similar devices and could only occasionally climb stairs, balance, stoop, kneel, crouch, or crawl.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work.  (T. 29-30.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the RFC determination was not supported by substantial evidence.  (Dkt. No. 9 at 8-11 [Pl.'s Mem. of Law].)  Second, and lastly, Plaintiff argues the step four determination was not supported by substantial evidence.  (*Id.* at 11-13.)

---

[1]     Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly weighed the medical evidence and found that Plaintiff could perform a range of sedentary work. (Dkt. No. 15 at 4-9 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ properly found that Plaintiff could perform her past relevant work. (*Id.* at 9-10.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

5

are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Weighing of Medical Opinion Evidence and RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In formulating Plaintiff's RFC, the ALJ will consider all of the relevant medical and other evidence in the record. *Id.* at § 404.1545(a)(3). The relevant factors considered in determining what weight to afford a medical opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. *Id.* at § 404.1527(c)(1)-(6)[2].

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c). " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter*

---

[2] Effective March 27, 2017, 20 C.F.R. § 404.1527 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

*alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 Fed.Appx. 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

In formulating his RFC determination the ALJ relied on treatment notations provided by Cayuga Medical Center, New York Spine and Wellness Center, and Lansing Chiropractic Office. (T. 27-28.) The record also contained a consultative physical evaluation performed by Justine Magurno, M.D. and a medical source statement completed by treating chiropractor, Robert Brown, D.C. (T. 228-236, 237-242.)

In September of 2013, Dr. Brown completed a medical source statement at the request of New York State Office of Temporary and Disability Assistance Division of Disability Determinations. (T. 228-236.) Dr. Brown stated he treated Plaintiff for

7

lumbosacral neuritis which caused constant burning in her low back and intermittent lower extremity pain of 8/10. (T. 228.) He stated her condition would "most likely worsen over time." (T. 229.) When asked to provide clinical findings, Dr. Brown wrote that Plaintiff had "50% extension, right lateral flexion of lumbar spine, reflexes +2," and "loss of vibratory sense [in her] right distal lower extremity." (T. 230.) Dr. Brown indicated further clinical findings of negative heel toe walking, positive straight leg raise on the left at 40 degrees for low back and left thigh pain, positive straight leg raise on the right for low back pain, positive left Fabere for left hip pain, no atrophy, and difficulty rising from squat. (T. 231.) He also noted Plaintiff had difficulty rising from a seated position. (T. 232.) When asked to provide laboratory findings, Dr. Brown indicated that an MRI performed on October 13, 2009 showed disc bulge at L4/5. (T. 230.)

Dr. Brown also provided specific functional limitations. He opined Plaintiff could occasionally lift and carry up to 10 pounds and could lift and carry a maximum of 10 pounds. (T. 232.) He opined Plaintiff could stand and/or walk less than two hours per day. (T. 233.) He opined Plaintiff could sit up to six hours per day. (*Id.*) He opined Plaintiff had no limitation in her ability to push and/or pull with her upper extremities; however, she was limited in her ability to push and/or pull with her lower extremities due to poor dexterity. (*Id.*)

On September 25, 2013, Dr. Magurno performed an examination and provided a medical source statement. (T. 237-242.) On examination, Dr. Magurno noted Plaintiff had a normal gait; could walk on heels and toes; could fully squat, but had difficulty rising; had a normal stance; needed no help changing for the exam or getting on and off the exam table; had mild difficulty rising from a chair, but stood for a few minutes before

she could move after rising. (T. 239.) On examination, Plaintiff had full range of motion in her cervical spine, but complained of a "pulling sensation." (T. 240.) Dr. Magurno observed on examination that Plaintiff's lumbar spine had full flexion, extension 15 degrees, and full lateral flexion bilaterally. (*Id.*) She observed Plaintiff had full range of motion in her upper and lower extremities. (*Id.*) Dr. Magurno also reviewed X-rays which indicated "mild degenerative spondylosis at L4-L5." (T. 242.)

Dr. Magurno stated in a medical source statement that Plaintiff had "moderate limitations for squatting, lifting, and carrying. . . .[t]here are mild limitations for bending and sitting." (T. 241.)

The ALJ afforded Dr. Magurno's statement "substantial weight" even though the statement was "somewhat imprecise." (T. 29.) The ALJ reasoned that Dr. Magurno personally examined Plaintiff, and based her opinion on her physical findings which were "largely benign." (*Id.*) The ALJ afforded Dr. Brown's opinion "little weight." (T. 28.) The ALJ reasoned he was a non-acceptable medical source, his opinion was "overstated" given his physical findings, and his opinion was inconsistent with other evidence in the record. (*Id.*) The ALJ further reasoned that Dr. Magurno's physical findings undermined Dr. Brown's opinion which was "overly restrictive." (T. 29.)

Plaintiff contends that the ALJ failed to fully and fairly develop the record because he failed to seek clarification from Dr. Magurno regarding her "somewhat imprecise" opinion. (Dkt. No. 9 at 9-10 [Pl.'s Mem. of Law].) Plaintiff also contends that Dr. Magurno's opinion could not constitute substantial evidence because she did not review any medical records prior to delivering her September 2013 assessment and failure to provide such records constitutes harmful, reversible error. (*Id.* at 10-11.)

First, a consultative examiner is not required to obtain or review laboratory reports or treatment records. *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (the ALJ did not commit reversible error for relying on the opinion of a consultative examiner where the examiner did not review plaintiff's record, however he personally examined plaintiff and reached conclusions consistent with the objective medical evidence in the record); *see Genito v. Comm'r of Soc. Sec.,* No. 7:16-CV-0143 (GTS), 2017 WL 1318002, at *9 (N.D.N.Y. Apr. 7, 2017) ("there is no legal requirement that opinion sources must have access to a full and complete record in order for their opinions to be sufficient to constitute substantial evidence"); *see* 20 C.F.R. § 404.1519n(c)(1)-(7) (elements of a complete consultative examination). Here, Dr. Magurno took a complete history of Plaintiff's complaints and treatment, reviewed Plaintiff's medication, took Plaintiff's social history and activities of daily living, performed a complete physical examination, reviewed an X-ray of Plaintiff's spine, provided diagnosis and prognosis, and gave a medical source statement. (T. 237-242.) Therefore, the ALJ did not commit legal error in relying on the opinion of a consultative examiner who did not review Plaintiff's entire record.

Second, Plaintiff's contention that Dr. Magurno's opinion was impermissibly vague and the ALJ was required to contact her for clarification is not persuasive. To be sure, a consultative examiner's report which concludes that a plaintiff's condition is "mild" or "moderate," without additional information, does not allow an ALJ to infer that a plaintiff is capable of performing the exertional requirements of work. *See Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds; see Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (consultative examiner's opinion was

"remarkably vague" and meaning was left to the ALJ's "sheer speculation"); *see Carrube v. Astrue,* No. 3:08-CV-0830, 2009 WL 6527504, at *8 (N.D.N.Y. Dec. 2, 2009) (remanding where consultative examiner's opinion on plaintiff's ability to lift weight, was so vague that the court "cannot fathom what might support the ALJ's conclusion that Plaintiff could lift and carry twenty-five to fifty pounds"), *report and recommendation adopted by,* 2010 WL 2178499 (N.D.N.Y. May 28, 2010).

Although a consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in all situations. *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014) (GLS) ("[W]hether an [ALJ's] reliance on a consultative examiner's vague opinion is reversible error is contextual rather than *per se.* Reviewing courts must weigh the impact of vague opinion in its unique factual circumstance.").

Courts have held that a consultative examiner's conclusion was not impermissibly vague where the conclusion was "well supported by his extensive examination." *Waldau v. Astrue,* No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2003); *Mauzy v. Colvin*, No. 5:12-CV-866, 2014 WL 582246, at *9 (N.D.N.Y. Feb. 13, 2014). Courts have also held that medical source statements from consultative examiners which provide vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record. *Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (a consultative examiner's opinion was not too vague where "the facts underlying that opinion and the other medical opinions in the record lend it a more concrete meaning"); *see Sweeting v. Colvin,* No. 12-CV-0917, 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (plaintiff's

contention that consultative examiner's use of the term "moderate" in his opinion was vague lacked merit as consultative examiner made specific findings based on physical examination of plaintiff); *Melton v. Colvin*, No. 13-CV-6188, 2014 WL 1686827, at *13 (W.D.N.Y. Apr. 29, 2014) (substantial evidence supported ALJ's RFC determination that plaintiff could perform sedentary work where consultative examiner opined plaintiff had moderate limitations in lifting and carrying and other objective evidence in the record to supported this determination).

To be sure, Dr. Magurno's opinion contained vague language.  However, the ALJ's determination that Plaintiff could perform the lifting and carrying requirements of sedentary work was supported by both Drs. Magurno and Brown's opinions.  Dr. Magurno opined Plaintiff had "moderate" limitations in her ability to lift and carry, and Dr. Brown specifically opined Plaintiff could occasionally lift and carry up to ten pounds.  (T. 232, 241.)  The opinions of both doctors also support the determination that Plaintiff could sit for the required amount of time under sedentary work.  Dr. Magurno opined Plaintiff had "mild" limitations in sitting and Dr. Brown opined Plaintiff could sit up to six hours in an eight hour day.  (T. 232, 233.)  Therefore, substantial evidence in the record supported the ALJ's determination that Plaintiff could perform the lifting, carrying, and sitting requirements of sedentary work.

Although sedentary work is primarily performed in the seated position, a certain amount of standing and walking are necessary.  Jobs are sedentary if walking and standing are required occasionally, meaning occurring from very little up to one-third of the time, and would generally total no more than about two hours in an eight hours workday.  SSR 96-9p.  Dr. Magurno did not provide an opinion regarding Plaintiff's

ability to stand and/or walk and Dr. Brown opined Plaintiff could stand and/or walk "less than two hours a day." (T. 233, 241.)  Of note, Dr. Brown was provided the following options when asked about Plaintiff's ability to stand and/or walk: "up to 8 hours per day," "up to 6 hours per day," "up to 2 hours per day," and "less than 2 hours per day."  (T. 233.)  Therefore, Dr. Brown's opinion, that Plaintiff could stand and or walk less than two hours per day may not be inconsistent with the requirements of sedentary work which "generally" standing and/or walking no more than two hours a day.  However, Dr. Magurno failed to provide an opinion regarding Plaintiff's ability to walk and/or stand and Dr. Brown's opinion may or may not support the standing/walking requirements of sedentary work.  The ALJ's determination provided a clear analysis and support for the determination that Plaintiff could perform the sitting, lifting, and carrying requirements of sedentary work; however, remand is recommended for a more detailed analysis of Plaintiff's ability to perform the standing/walking requirements.

Of note, this Report and Recommendation should not be read as requiring the ALJ to perform a function-by-function analysis.  The Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a per se error requiring remand.  *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir.2013).  Here, however, the ALJ's RFC indicated that Plaintiff has greater physical abilities than opined by any medical opinion of record, most notably in walking and/or standing.  Therefore, remand is recommended for an evaluation and determination of Plaintiff's ability to perform the standing/walking requirements of sedentary work.

    **B.  Step Four Determination**

At step four of the five step sequential evaluation process for determining whether an individual is disabled, the ALJ must determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of proving that she can no longer perform her past relevant work. *Id.* at § 404.1520(f).

The term past relevant work is defined as "work that [the plaintiff] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the plaintiff] to learn to do it. 20 C.F.R. § 404.1560(b)(1); *see Melville v. Apfel*, 198 F. 3d 45, 53 (2d Cir. 1999). Past work experience is therefore not past relevant work for the purposes of the step four analysis unless it is considered substantial gainful activity, and the determination of whether work was substantial gainful activity requires an assessment of "how well the [plaintiff] performed her duties, whether those duties were minimal and made little or no demand on her, what her work was worth to the employer, and whether her income was tied to her productivity." *Melville*, 198 F. 3d at 53.

At step four the ALJ stated that Plaintiff's position as an office manager, finance manager, and receptionist, qualified as past relevant work. (T. 29-30.) The ALJ concluded the occupations: "were performed in the past 15 years at substantial gainful activity levels, and they were all performed long enough to learn the position and provide average performance." (T. 30.)

Plaintiff asserts that the ALJ erred in his step four determination that Plaintiff was capable of performing her past relevant work as a finance manager and receptionist because it was not clear from the evidence that Plaintiff had the time to learn either of those positions. (Dkt. No. 9 at 11-12 [Pl.'s Mem. of Law].) Plaintiff further contends that

14

the ALJ erred in concluding she could perform the position of office manager because Plaintiff testified that she was fired from that position due to absenteeism and needing to lay down during work hours. (*Id.* at 12-13.)

The Second Circuit has recently held that, where a record is rife with inconsistent information regarding a plaintiff's past relevant work, an ALJ's "lone sentence" at step four that plaintiff can perform his past relevant work because he performed the occupation within the past 15 years, for a sufficient amount of time, and with sufficient earnings, is inadequate and warrants remand. *Klemens v. Berryhill*, 2017 WL 4387186 (2d Cir. Oct. 3, 2017). In *Klemens*, the ALJ determined that the plaintiff could perform his past relevant work because the work met the requirements of 20 C.F.R. § 404.1560(b)(1). However, the Second Circuit found that the record was "rife with inconsistent information regarding [plaintiff's] 2007 earnings" and that the ALJ's "lone sentence" at step four was inadequate to support a finding that plaintiff's past relevant work was performed at the level of substantial gainful activity. *Klemens*, 2017 WL 4387186, at *2.

Here, as in *Klemens*, the ALJ's step four determination failed to contain any analysis, discussion, or citation to the record in support of his determination. Further, the record concerning Plaintiff's past relevant work was either "rife with inconsistencies" or completely silent. Therefore, remand is recommended to obtain more information regarding Plaintiff's past relevant work, resolve inconsistencies in the record, and to provide a more detailed analysis as step four.

As an initial matter, the ALJ's step four determination, as in *Klemens*, was inadequate. The ALJ determined Plaintiff performed work as a finance manager, office

manager, and receptionist. (T. 29.) The ALJ concluded that all of the positions qualified as past relevant work because they were performed in the past 15 years at substantial gainful activity levels, and were all performed long enough to learn the position and provide average performance. (T. 30.) To be sure, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10-CV-1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)). Here however, the ALJ's reasoning cannot be gleaned from his decision because nowhere else in the decision was Plaintiff's past relevant work discussed. Further, the information in the record regarding Plaintiff's past relevant work, including paperwork submitted to the Agency and testimony given at the hearing, was sparse and inconsistent.

Based on paperwork completed by Plaintiff, she performed work as a finance manager from approximately March 2012 to April 2013, and as a receptionist from March 2012 to June 2012. (T. 151.) Plaintiff also worked as an office manager from June 1997 to February 2010. (*Id.*) At the hearing Plaintiff testified that her last job was as a finance manager at a doctor's office. (T. 38.) Plaintiff indicated she was dismissed from that job because she missed too much time. (T. 39.) Plaintiff did not provide any further testimony regarding her past work experience.

Plaintiff contends that she did not perform the work of finance manager and receptionist long enough to learn those positions. (Dkt. No. 9 at 11-12 [Pl.'s Mem. of Law].) The Dictionary of Occupational Titles ("DOT") assigns each listed occupation a

Specific Vocational Preparation ("SVP") level ranging from 1 to 9.  SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, App. C.

At the hearing a vocational expert ("VE") testified that Plaintiff's past relevant work consisted of finance manager (DOT 186.167-086), office manager (DOT 169.167-034) and receptionist (DOT 237.367-038).  (T. 57-58.)  The VE testified that the occupation of finance manager had an SVP of 8, office manager had an SVP of 7, and receptionist had an SVP of 4.  (T. 57-58.)  An SVP of 8 requires over four years and up to and including ten years to learn the techniques, acquire the information, and develop the facility needed for average job performance.  DOT, App. C, II.  An SVP of 7 requires over two years up to and inducing 4 years.  *Id.*  An SVP of 4 requires over three months up to and including six months to learn the position.  *Id.*

Here, there were inconsistencies in the record regarding the nature of Plaintiff's past relevant work that should be clarified on remand.  Plaintiff testified she performed work as a finance manager at a doctor's office.  (T. 38, 151.)  Nowhere in the record was there a description of the duties Plaintiff performed in that position.  The DOT code provided by the VE for "finance manager" is titled "Manager, Financial Institution."  DOT 186.167-086.  The DOT describes the occupation as person who:

> Manages branch or office of *financial institutions, such as commercial bank, credit union, finance company, mortgage company, savings bank, or trust company*: Directs and coordinates activities to implement institution policies, procedures, and practices concerning granting or extending lines of credit, commercial loans, real estate loans, and consumer credit loans. Directs, through subordinate supervisors, activities of workers engaged in implementing establishment services and performing such functions as collecting delinquent accounts, authorizing loans, or opening savings

17

> account. Establishes procedures for custody and control of assets, records, loan collateral, and securities to ensure safekeeping. Contacts customers and business, community, and civic organizations to promote goodwill and generate new business. May prepare financial and regulatory reports required by law, regulations, and board of directors. May examine, evaluate, and process loan applications. May recommend securities to board or corporate officers for institution investment. May talk to customers to resolve account problems. May interview and hire workers. May evaluate data pertaining to costs to plan budget. May plan and develop methods and procedures for carrying out activities of establishment. May be designated according to type of financial institution managed, as Manager, Branch Bank (financial); Manager, Commercial Bank (financial); Manager, Credit Union (financial); Manager, Finance Company (financial); Manager, Mortgage Company (financial); Manager, Savings Bank (financial); Manager, Trust Company (financial).

DOT 186.167-086 (emphasis added). Nothing in the record suggested Plaintiff worked in a financial institution or performed any of the tasks outlined in the description above. Second, as Plaintiff asserts, she worked as a finance manager for approximately one year, which is inconsistent with an SVP of 8 which requires at least four years, and up to ten, to learn the occupation.

On remand Plaintiff's other past occupations should be clarified as well. For example, Plaintiff indicated she worked as a receptionist from March 2012 to June 2012 at a physical therapy office. (T. 151.) Plaintiff was also working as a finance manager at that time. (*Id.*) Earning records from Molino Physical Therapy showed total earnings in the amount of $1,440.00. (T. 141.) It is unclear from the record if Plaintiff performed work as a receptionist at the level of substantial gainful activity and if she performed the work long enough to learn the occupation.

Plaintiff also performed work as an office manager, which the ALJ determined qualified as past relevant work. (T. 29-30.) However, as in *Klemens*, the ALJ failed to

elicit any testimony regarding her work as an office manager and merely asserted that the work constituted past relevant work.  *Klemens*, 2017 WL 4387186, at *2.

In sum, remand is recommended for a proper RFC determination, specifically in light of evidence suggesting Plaintiff's ability to stand and/or walk was more limited than accounted for in the RFC determination.  Remand is also recommended for a proper determination at step four because there were inconsistencies in the record, or a complete lack of information, to support the determination that Plaintiff could perform her past relevant work.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED**, and the Commissioner's determination be **DENIED**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     October 30, 2017

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge